Argued and submitted November 19, affirmed December 19, 1984

## SCHREINER'S GARDENS et al,
*Petitioners,*

*v.*

## DEPARTMENT OF ENVIRONMENTAL QUALITY et al,
*Respondents.*

(84-003, 84-004, 84-005; CA A33460)

692 P2d 660

Ronald L. Saxton, Portland, argued the cause for appellants. With him on the brief were Catherine Riffe, Rick T. Haselton, and Lindsay, Hart, Neil & Weigler, Portland.

Michael B. Huston, Assistant Attorney General, Salem, argued the cause for respondent Department of Environmental Quality. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

James N. Westwood, Portland, argued the cause for respondent Trans Energy - Oregon, Inc. With him on the brief were Richard A. Cantlin, and Miller, Nash, Wiener, Hager &

Carlsen, Portland, and Wallace W. Lien, and Rhoten, Brand & Lien, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners appeal from an order of the Land Use Board of Appeals affirming the Department of Environmental Quality's issuance of an air containment discharge permit, a waste disposal permit and a solid waste disposal permit to respondent Trans Energy - Oregon for the operation of a waste burning facility in Marion County.

Petitioners earlier appealed to LUBA from the county's decision approving the location of the facility. LUBA dismissed that appeal, because it was not filed timely. We affirmed that dismissal without opinion. *Schreiner's Gardens v. Marion County,* 66 Or App 194, 674 P2d 630 (1983). In this appeal, petitioners contend in their first assignment of error that DEQ's determination that issuance of the permits was consistent with land use requirements was made solely in reliance on Marion County's finding of land use compatibility and that ORS 197.180(1) required DEQ to make an independent determination and findings. Petitioners argue in their second assignment that the location of the waste burning facility on the site approved by Marion County contravenes the county's acknowledged comprehensive plan and implementing ordinance and that DEQ's finding of consistency with applicable land use requirements is not supported by substantial evidence.

ORS 197.180(1) provides:

"Except as provided in ORS 527.722, state agencies shall carry out their planning duties, powers and responsibilities and take actions that are authorized by law with respect to programs affecting land use:

"(a)  In compliance with goals adopted or amended pursuant to ORS 197.005 to 197.430 and 197.610 to 197.850; and

"(b)  Except when a finding is made under ORS 197.640(3)(c), in a manner compatible with:

"(A)  Comprehensive plans and land use regulations initially acknowledged under ORS 197.251; and

"(B)  Amendments *to* acknowledged *comprehensive* plans or land use regulations or new land use regulations acknowledged under ORS 197.625."

At the time DEQ issued the permits, the rule of the

Land Conservation and Development Commission, OAR 660-31-035, provided, as relevant:

"State Agencies shall rely upon the affected local governments *[sic]* consistency determination in the following cases:

"(1) When the agency finds the affected local government has determined that the proposed activity and use are consistent with its Acknowledged Comprehensive Plan and implementing ordinances."

ORS 197.180(7) was enacted in 1983, after OAR 660-31-035 was promulgated, but it was also in effect when DEQ issued the permits. It provides:

"[LCDC] shall adopt rules establishing procedures to assure that state agency permits affecting land use are issued in compliance with the goals and compatible with acknowledged comprehensive plans and land use regulations, as required by subsection (1) of this section. The rules shall prescribe the circumstances in which state agencies may rely upon a determination of compliance or compatibility made by the affected city or county. The rules shall allow a state agency to rely upon a determination of compliance by a city or county without an acknowledged comprehensive plan and land use regulations only if the city or county determination is supported by written findings demonstrating compliance with the goals. Nothing in this subsection requires decisions made under ORS 197.835(7) to be reviewed for or include findings showing compliance with the goals."[1]

Petitioners' first argument in support of their first assignment is that OAR 660-31-035 was in conflict with ORS 197.180(1) at the time the rule was promulgated and that ORS 197.180(7)

"* * * directs LCDC to adopt a rule to prescribe the circumstances in which state agencies may rely upon a determination of compliance or compatibility made by the affected city or county. Prior to its enactment, there was no statutory basis for any state agency reliance on local government findings."

We do not understand petitioners to challenge

---

[1] LCDC amended OAR 660-31-035 after ORS 197.180(7) was enacted and after the permits were issued. Although petitioners do not share our view, we find the fact and the substance of the amendment to be totally irrelevant to the issues in this appeal.

LCDC's underlying rulemaking authority. Their argument is that the specific rule in question was inconsistent with ORS 197.180(1) when it was adopted and that the *subsequent* enactment of ORS 197.180(7) did not "ratify any pre-existing, unauthorized rules." The basic difficulty with petitioners' argument is that it fails to demonstrate that the rule was ever inconsistent with ORS 197.180(1). LUBA concluded:

> "While ORS 197.180(1) requires that state agencies make land use decisions consistent with the goals and acknowledged local plans and ordinances, we do not believe this statute precludes an administrative rule allowing state agencies to rely on statements of land use consistency adopted by other jurisdictions. The rule in question does not authorize non-compliance with land use regulations. It simply allows another manner of showing compliance. * * *" (Footnotes omitted.)

We agree with LUBA's conclusion.

Petitioners also argue in support of their first assignment that:

> "Even if ORS 197.180(7) permitted an administrative rule that was effective during the period relevant to this case, OAR 660-31-035 is overly broad as applied. ORS 197.180(7) authorizes a rule which allows reliance on local government determination under *certain* circumstances. OAR 660-31-035 purports to allow reliance in *all* circumstances and is therefore overly broad and beyond the terms of the statute. A reading of ORS 197.180(7) which relieves state agencies of any obligation to determine land use consistency whenever there has been a land use determination by a local government makes a sham out of the requirement of ORS 197.180(1). By allowing DEQ to fulfill its statutory duty simply by adopting the findings of another jurisdiction, LUBA effectively eliminates any obligation on DEQ's part. This cannot be what the legislature intended. Almost all state agency actions affecting land use will involve issues requiring local government consideration. The legislation made no exception to ORS 197.180(1) for circumstances that involve multiple jurisdictions." (Emphasis petitioners'.)[2]

We disagree.

---

[2] Petitioners' argument is cast in terms of whether ORS 197.180(7) validates the promulgation of the rule after the fact. We see the issue as being whether the statute is more restrictive than the rule and whether the subsequent enactment of the statute invalidates the rule that was lawful when promulgated.

■ ORS 197.180(7) expressly confers authority on LCDC to prescribe the circumstances under which agencies may rely on local determinations of compliance or compatibility; the only limitation the statute places on that authority relates to determinations by cities or counties without acknowledged comprehensive plans. To the extent that petitioners base their arguments on the statutory language, that language does not support them.

■ We also find no merit in the policy aspect of petitioners' argument. This appeal illustrates why the rule is well within the range of rulemaking discretion contemplated by the statute. *See Springfield Education Assn. v. School Dist.,* 290 Or 217, 229, 621 P2d 547 (1980). As we note below in our discussion of petitioners' second assignment, the only issue they raise about the *substance* of the county's or DEQ's land use decisions is whether the *county's siting decision* complies with the *county's zoning ordinance.* We do not conclude that ORS 197.180(7) was intended to foreclose LCDC from adopting a rule that allows agencies to rely on local compliance determinations in this and comparable situations.

We turn to petitioners' second assignment of error. Although the assignment is *formulated* as a challenge to LUBA's failure "to determine that DEQ lacked substantial evidence * * * supporting DEQ's issuance of the permits as consistent with Marion County's Comprehensive Plan and applicable zoning ordinances," the substance of what petitioners argue is that the location of a solid waste disposal facility on the site approved by the county is permissible under the county's zoning ordinance *only if* there is a determination that there is no other feasible location. Petitioners state that "[t]he record before DEQ and LUBA demonstrates that there are alternative sites and one of the alternative sites is better suited to the project."

■ However assiduous petitioners may be in their efforts to find or place the pea under DEQ's shell, the *real* decision they are challenging is the county's approval of the site. Assuming that DEQ was required to decide that the siting decision complied with the county ordinance, that is exactly the kind of decision that OAR 660-31-035 permitted DEQ to base on the county's compatibility determination. Because DEQ was not required to and did not make an independent

evaluation of the compatibility of the disposal location with the county's land use legislation, neither was LUBA and neither are we in our review of DEQ's decision.

There is a further reason why we decline to reach the merits of petitioners' arguments concerning the compatibility of the siting decision with the county's ordinance. Respondents argue:

> "After a public hearing and consideration of a record generated by petitioners and others, the Marion County Commission made a final finding that the * * * facility would be compatible with the Marion County Comprehensive Plan. Petitioners were entitled to appeal that finding to LUBA, but they failed to do so before, by operation of statute, the Marion County finding became absolutely final and not appealable to any tribunal.
>
> "* * * Petitioners are precluded from relitigating the issue. * * *
>
> "* * * [T]he dismissal of an appeal, on whatever ground, has the effect of affirming the ruling below. * * * For those reasons, petitioners cannot again challenge the Marion County compatibility finding. If DEQ in its discretion had reviewed the Marion County record anew, petitioners *might* have a basis on which to relitigate the issue. DEQ's reliance on the final Marion County finding, however, means that petitioners are barred from this 'back door' attempt to resurrect a final administrative finding." (Emphasis respondents'.)

LUBA rejected that argument and reached the merits. It explained:

> "Respondent Trans-Energy claims that petitioners' challenge should not be allowed because our determination in *Schreiner's Gardens and David Schreiner v. Marion County and Trans-Energy Systems*, 8 Or LUBA 261 (LUBA No. 83-065, 1983), *aff'd* without opinion, 66 Or App 194 (1983), prevents petitioners from bringing this appeal. We disagree. The Board never reached the issues in that case, dismissing the case for procedural reasons having nothing to do with the merits of Marion County's decision to site the garbage burner. The petitioners failed to file the petition for review on time. We do not view this failure to result in a judgment on the merits as when a defendant fails to appear and a default is taken against him. *See Gwynn v. Wilhelm*, 226 Or [606], 360 P2d 312 (1961).
>
> "The matter of whether alternate sites are available is

most logically a matter for determination by Marion County and not the Department of Environmental Quality. Nonetheless, ORS 197.180(7) [sic: (1)] requires state agencies to take actions in compliance with land use planning goals, and it would appear the statute creates an obligation to insure that statewide land use planning criteria are complied with even if the particular issue is outside the expertise of the agency. DEQ relied on Marion County's choice of site. This reliance is at the agency's peril. In other words, DEQ is responsible for compliance with all applicable criteria." (Citations omitted.)

■■ We agree generally with respondents. Petitioners had the opportunity to appeal the county's siting decision directly. The distinction LUBA makes between a dismissal of an appeal for untimeliness and an adverse decision on the merits of an appeal is inapposite. The decisive issue is *finality,* not *res judicata.*[3] The county's siting decision is no more subject to collateral attack because of the coincidence that the activity to be conducted on the site requires DEQ permits than it is subject to a belated appeal taken under any other guise.

Affirmed.

---

[3] We imply no view about the correctness of LUBA's reasoning if *res judicata* were the issue.